Argued and submitted May 28, 2009, reversed and remanded June 2, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ALFREDO ALVAREZ-AMADOR,
*Defendant-Appellant.*

Lincoln County Circuit Court
072749; A136807

232 P3d 989

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals from a judgment of conviction of identity theft, ORS 165.800. For the reasons set forth below, we conclude that the trial court did not err by denying defendant's motion for a judgment of acquittal but did err by admitting into evidence a certification from the Social Security Administration. We reject defendant's third assignment of error without discussion, and we reverse and remand.

The pertinent facts are few and undisputed. Defendant was employed at a restaurant for five years. To establish eligibility for employment, defendant showed his manager a Social Security card and completed a Form I-9, an employment eligibility verification form, listing the Social Security number shown on the card. Instructions on the form state that a Social Security card is among the documents that may be used to establish employment eligibility and that the form is for employers to verify employment eligibility "to preclude the unlawful hiring * * * of aliens who are not authorized to work in the United States." The form states, "I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form." (Boldface omitted.) Later, defendant provided two other Social Security numbers to his employer on tax forms; those two numbers differed from each other by one digit.

Some time later, defendant was charged with identity theft. Although ORS 165.800(1) provides that a person may commit the crime of identity theft "with the intent to deceive *or* to defraud" (emphasis added), the indictment charged only that he "did unlawfully with the intent to defraud obtain and possess personal identification of a real or imaginary person, to wit: a fraudulent U.S. government Social Security number, [the number listed on defendant's Form I-9]."

At trial, the state offered a certification from a custodian of records of the Social Security Administration (SSA). A police officer testified that he had asked the SSA to provide verification of the Social Security number. The certification

states that two Social Security numbers, including the number identified in the indictment, "do not belong to [defendant]. These two numbers have been assigned by the Commissioner of the Social Security Administration to two other individuals whom [*sic*] both are now deceased." Defendant objected to the certification, and the trial court overruled his objection.

At the close of the state's case, defendant moved for a judgment of acquittal. He argued that, although the prosecution had alleged an "intent to defraud," there is no evidence that defendant intended to defraud anyone of anything. The court denied defendant's motion, and the jury found him guilty. Defendant appeals.

■       We begin with defendant's first assignment of error, the denial of his motion for a judgment of acquittal. On appeal, defendant renews his arguments that the evidence was insufficient to allow a finding that he had the intent to defraud. He contends that, because ORS 165.800(1) requires an "intent to deceive or to defraud," defraud must mean something distinct from deceive and, under the plain meaning of defraud, "the state was required to show that [defendant] took or withheld something from some victim." In defendant's view, no one was deprived of any possession, right, or interest by his use of the Social Security number.

The state responds that the evidence was sufficient to allow a reasonable jury to find an intent to defraud based on defendant's use of the Social Security number to obtain a benefit to which he was not entitled or to mislead others into acting to his benefit. In the state's view, defendant caused his employer to rely on false information so that he could maintain employment when he had no legal right to do so, and he caused his employer to report false information to the federal government, preventing the federal government from taking legal action against him.

■       We review the denial of a motion for a judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121,

125, 873 P2d 316 (1994). We resolve issues of statutory interpretation by applying the principles of *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We attempt to ascertain what the legislature most likely intended, beginning by examining the text of the statute in context. *Id.* at 171-72.

ORS 165.800(1) provides, "A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." "Personal identification" includes a written document that provides or purports to provide information about a person's Social Security number. ORS 165.800(4)(b)(C). As noted, the indictment in this case alleged that defendant acted "with the intent to defraud."

The word "defraud" is not defined in the statute. It commonly means "to take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception ~ the heirs of the bequests› ‹citizens ~ed of their voting rights› * * * to engage in fraud." *Webster's Third New Int'l Dictionary* 593 (unabridged ed 2002). *Webster's* defines "fraud" as

> "**1 a :** an instance or an act of trickery or deceit esp. when involving misrepresentation * * * *or* **fraud in fact :** an intentional misrepresentation, concealment, or nondisclosure for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right : a false representation of a matter of fact by words or conduct, by false or misleading allegations, or by the concealment of what should have been disclosed that deceives or is intended to deceive another so he shall act upon it to his legal injury * * * **b :** a means used in trickery : a dishonest stratagem or a spurious thing passed off as genuine."

*Id.* at 904 (emphasis in original).

Those definitions are consistent with the sense of "defraud" and "fraud" in law. "Defraud" means "[t]o cause injury or loss to (a person) by deceit. See FRAUD." *Black's Law Dictionary* 488 (9th ed 2009). *Black's* defines "injury" as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *Id.* at 856. "Fraud" is

defined to mean, among other things, "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. • Fraud is usu. a tort, but in some cases (esp. when the conduct is willful) it may be a crime." *Id.* at 731. "Criminal fraud" is defined as "[f]raud that has been made illegal by statute and that subjects the offender to criminal penalties such as fines and imprisonment. • An example is the willful evasion of taxes accomplished by filing a fraudulent tax return." *Id.* at 732.

We conclude that, under ORS 165.800(1), the intent to defraud includes an intent to cause injury to another's legal rights or interests.[1] Here, a jury could find from defendant's misrepresentation on the Form I-9 that defendant intended to defraud the federal government. The jury could infer that, by making an intentional misrepresentation on the Form I-9, defendant intended to injure the legal interest of the federal government in enforcing its laws. That intent is sufficient to establish the intent "to defraud" under ORS 165.800(1).

In addition, the statute's history suggests that defendant, by misrepresenting his employment eligibility so as to cause his employer to give him a job that he was not legally eligible to have, also had an intent to defraud the employer. Although the dictionary definitions of "defraud" may be ambiguous as to whether such a misrepresentation is consistent with an intent to defraud, the statute's history indicates that the legislature intended ORS 165.800 to encompass such misrepresentations.

When ORS 165.800 was enacted in 1999, the intent element was limited to "the intent to defraud"; the alternative intent to "deceive" was added in the next legislative session. Or Laws 2001, ch 870, § 3. Even before that 2001 amendment, however, the statute provided affirmative

---

[1] Our construction of ORS 165.800 is consistent with historical understandings of fraud. *See State v. Moyer*, 348 Or 220, 234-35, 230 P3d 7 (2010) (noting that "misrepresentations made with intent to injure or defraud * * * were statutorily prohibited as criminal acts as early as 1864 * * *. That early statute covered a variety of misrepresentations, including those aimed at defrauding individuals and the 'body politic.' " (Citation and footnote omitted.)).

defenses to identity theft when a person uses personal identification solely for the purpose of misrepresenting the person's age so as to purchase alcohol or tobacco products or to gain access to an age-restricted place or benefit. ORS 165.800(3) (1999).[2] The legislature apparently considered such use consistent with an intent to defraud, so that an affirmative defense was required to prevent prosecution for identity theft when, for example, a minor uses false identification to purchase alcohol or to enter a bar. If the legislature had meant the intent to defraud to refer only to taking or obtaining property, that affirmative defense would have been unnecessary because such use does not deprive another of property. Use of personal identification to misrepresent a person's age does, however, place persons to whom the false identification is presented in the position of unwittingly violating laws prohibiting the sale of alcohol and tobacco to underage buyers, or prohibiting the admission of underage patrons to particular places. If such use of false identification is consistent with an intent to defraud, then defendant's presentation of a false Social Security number, which placed his employer in the position of unwittingly violating laws concerning employment eligibility, also is consistent with an intent to defraud. The trial court did not err by denying defendant's motion for a judgment of acquittal.

■■ We turn to defendant's second assignment of error, which challenges the admission of the SSA certification. Defendant contends that the trial court erred in admitting the certification, because that certification—which was prepared specifically for use in a criminal prosecution—was a

---

[2] ORS 165.800(3), which has not been amended since its enactment, provides:

"It is an affirmative defense to violating subsection (1) of this section that the person charged with the offense:

"(a) Was under 21 years of age at the time of committing the offense and the person used the personal identification of another person solely for the purpose of purchasing alcohol;

"(b) Was under 18 years of age at the time of committing the offense and the person used the personal identification of another person solely for the purpose of purchasing tobacco products; or

"(c) Used the personal identification of another person solely for the purpose of misrepresenting the person's age to gain access to a:

"(A) Place the access to which is restricted based on age; or

"(B) Benefit based on age."

testimonial statement and its admission violated defendant's Sixth Amendment right to confront the witnesses against him. The state responds that the certification was not a testimonial statement and that, in any event, it was merely cumulative of other evidence and thus any error was harmless. In the state's view, defendant's use of multiple Social Security numbers over the course of his employment was sufficient evidence that he had used false numbers.

After oral argument was held in this case, the United States Supreme Court issued its opinion in *Melendez-Diaz v. Massachusetts*, ___ US ___ , 129 S Ct 2527, 174 L Ed 2d 314 (2009). There, the Court considered whether "certificates of analysis" were testimonial—and thus whether the affiants were "witnesses" for purposes of the Sixth Amendment—where the certificates reported the results of forensic analysis indicating that a particular substance was cocaine. 129 S Ct at 2530-31. The Court concluded that the certificates, which were sworn statements, were affidavits made under circumstances that would cause an objective witness to reasonably believe that they would be used in a trial and thus were testimonial statements. *Id.* at 2532.

In responding to the dissent's view of the certificates' admissibility, the Court made various observations concerning public records that are pertinent here. Specifically, the Court distinguished between a clerk's authentication of a record, on the one hand, and a clerk's creation of a record, on the other:

> "The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record— or a copy thereof—for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted 'to certify to the correctness of a copy of a record kept in his office,' but had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.' *State v. Wilson*, 141 La. 404, 409, 75 So. 95, 97 (1917). See also *State v. Champion*, 116 N.C. 987, 21 S.E. 700, 700-701 (1895); 5 J. Wigmore, Evidence § 1678 (3d ed. 1940). The dissent suggests that the fact that this exception was 'narrowly circumscribed' makes no difference. To the contrary,

it makes all the difference in the world. It shows that even the line of cases establishing the one narrow exception the dissent has been able to identify simultaneously vindicates the general rule applicable to the present case. A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant.

"Far more probative here are those cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it. Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties—and although the clerk was certainly not a 'conventional witness' under the dissent's approach, the clerk was nonetheless subject to confrontation. See *People v. Bromwich*, 200 N.Y. 385, 388-389, 93 N.E. 933, 934 (1911); *People v. Goodrode*, 132 Mich. 542, 547, 94 N.W. 14, 16 (1903); Wigmore, *supra*, § 1678."

*Melendez-Diaz*, 129 S Ct at 2538-39 (some citations and internal quotation marks omitted; footnotes omitted; emphasis in original). The Court went on to explain the grounds for admissibility of business and public records:

"Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment."

*Id.* at 2539-40.

We conclude that the certification at issue here—in which an SSA representative certified that particular Social Security numbers "do not belong to [defendant]"—does not

fall within the limited historical exception recognized in *Melendez-Diaz*. The certification does not constitute an official record. Rather, it was apparently prepared in response to a police officer's request for information concerning defendant. The certification furnishes evidence that the number used by defendant was not his own. Under *Melendez-Diaz*, admission of the certification violated defendant's Sixth Amendment right to confrontation.

Although the state contends that the certification was merely cumulative, the other evidence was qualitatively different from the certification. The indictment alleged that defendant unlawfully obtained and possessed a specific Social Security number—the one on the Form I-9. The evidence that defendant later provided a different Social Security number to his employer, unlike the SSA certification, does not necessarily indicate that the number on the Form I-9 was not defendant's. Because we cannot say that the error in admitting the evidence was " 'harmless beyond a reasonable doubt,' " *State v. Lavadores*, 230 Or App 163, 176, 214 P3d 86 (2009) (citation omitted), we reverse and remand.

Reversed and remanded.