Argued and submitted March 29, affirmed October 26, 2011,
petition for review allowed June 14, 2012 (352 Or 107)

In the Matter of the Marriage of

Lisa MATAR,
*Petitioner-Respondent,*
*and*

STATE OF OREGON,
*Petitioner below,*
*and*

Azzam HARAKE,
*Respondent-Appellant.*

Washington County Circuit Court
C032405DRC; A143331

270 P3d 257

Daniel S. Margolin argued the cause for appellant. With him on the briefs was Stephens Margolin PC.

Helen C. Tompkins argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ROSENBLUM, S. J.

**ROSENBLUM, S. J.**

Father appeals the trial court's order dismissing his motion to modify child support for the reason that the parties' stipulated judgment of dissolution prevented them from seeking a modification. We conclude, as did the trial court, that enforcement of the agreement did not violate public policy and that the trial court did not err in dismissing father's motion, and we affirm.

The parties were divorced in March 2005, after seven years of marriage. They have two minor children who were ages four and six at the time of dissolution. The stipulated general judgment of dissolution provided that the parties would have joint legal custody, with mother having primary physical custody and father having reasonable parenting time. The judgment required that father pay child support of $1,742 per month, which exceeded the guidelines by $8, and further provided that neither party would seek a modification of that support obligation:

> "This agreement has been made with the understanding that child support will not be reduced and shall continue to be paid until the children are 21 years old. The parties stipulate that neither will seek a support modification due to income changes of the parties, nor due to a change of circumstances. For example, the child support amount will remain consistent even if Father has the children 50% of the time. This is a deviated support arrangement and came about due to the position of this case and the original decree's order of judgment."

The agreement further provides that "[n]either party shall be awarded or pay spousal support because of the child support agreement reached by the parties."

In 2009, father filed a motion seeking a reduction of support based on an alleged substantial change in circumstances, including a reduction in father's income from $7,300 to $6,200 per month. Mother sought to dismiss the motion, asserting that the stipulated general judgment prohibits a request for modification of the child support award.

At a hearing, father made an offer of proof as to what circumstances supported a reduction in child support. The

trial court found, based on the offer of proof, that father had shown a substantial change in circumstances based on the reduction of his income, but also found that, under the circumstances presented, the provision of the stipulated agreement prohibiting the parties from requesting changes in child support was enforceable and did not violate public policy. The court therefore granted mother's motion to dismiss.

On appeal, father contends that the trial court erred as a matter of law in dismissing the motion to modify child support, because the provision in the parties' stipulated judgment preventing the parties from seeking a modification of child support is unenforceable as contrary to law and public policy. Father acknowledges that the Legislative Assembly has expressed a strong policy in favor of enforcing voluntary dissolution agreements concerning spousal support and property division, *see* ORS 107.104; ORS 107.135(15), and that that policy has been recognized by the courts. *See, e.g., Patterson and Kanaga*, 242 Or App 452, 255 P3d 634, *rev den*, 351 Or 216 (2011) (upholding separation agreement's division of property); *McInnis and McInnis*, 199 Or App 223, 230, 110 P3d 639, *rev dismissed*, 338 Or 681 (2005) (upholding settlement provision limiting right to seek modification of spousal support). He contends, however, that the policy does not extend to agreements relating to child support, because the state must retain authority to protect children by having the ability to maintain support in conformance with the support guidelines.

Father's policy argument is incorrect. In several recent cases, we have discussed the presumption in favor of enforcement of stipulated dissolution judgments as expressed in the policy statements set forth in ORS 107.104(1) and ORS 107.135(15)(a), and in two recent cases, we have applied that presumption in the context of agreements regarding child support. In *Reeves and Elliott*, 237 Or App 126, 238 P3d 427 (2010), the father sought to avoid a provision in the original stipulated dissolution judgment that provided for payment of child support until the parties' children reached age 23. Citing case law and the statutory provisions, and recognizing the presumption in favor of enforcing marital dissolution agreements, we held that the parties' agreement was enforceable, despite the fact that the trial

court would not have had authority to order child support past age 21. We found no violation of law or public policy in an agreement that provided for a more generous support award than that required by law.

In *Porter and Griffin*, 245 Or App 178, 263 P3d 1146 (2011), we considered the enforceability of a provision in a stipulated judgment of dissolution that treated the father's nephew as a "child of the marriage" and required the father to pay child support for the nephew. In addressing the father's contention that the provision was void and unenforceable because the trial court lacked authority to award support for a nonjoint child, we cited *Reeves*, ORS 107.104(1), and the policy in favor of the enforcement of settlement agreements, and explained that the agreement was enforceable unless it was in violation of the law or public policy. Concluding that there was no violation of the law or public policy in an agreement to provide support for a child for whom support could not be awarded under ORS 107.105, we held that the agreement was enforceable. *Porter*, 245 Or App at 184.

In both *Reeves* and *Porter*, we relied on ORS 107.104, which provides, in part:

"(1)   It is the policy of this state:

"(a)   To encourage the settlement of suits for marital * * * dissolution * * *; and

"(b)   For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2)   In a suit for marital * * * dissolution * * *, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a)   As contract terms using contract remedies;

"(b)   By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)   By any combination of the provisions of paragraphs (a) and (b) of this subsection.

"(3)   A party may seek to enforce an agreement and obtain remedies described in subsection (2) of this section by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under subsection (2)(b) of this section is sought, complying with the statutory requirements for that remedy. All claims from relief arising out of the same acts or omissions must be joined in the same proceeding.

"(4)   Nothing in subsection (2) or (3) of this section limits a party's ability, in a separate proceeding, to file a motion to set aside, alter or modify a judgment under ORS 107.135 or to seek enforcement of an ancillary agreement to the judgment."

That statute provides for enforcement of "the terms set forth in a stipulated judgment signed by the parties" and, contrary to father's contention, it does not carve out a general exception for provisions relating to child support. The only exception is for enforcement of a provision that would violate the law or clearly contravene public policy.

Father contends that *any* agreement preventing a party from seeking modification of child support necessarily is contrary to public policy, because it deprives the court of the authority it must always retain in order to modify child support, as illustrated by the policy expressed in statutes that allow for administrative child support modification proceedings as frequently as every two years. *See* ORS 25.275(2)(a) (as child "is entitled to benefits from the income of both parents to the same extent that the child would have benefitted had the family unit remained intact"); ORS 25.287. We reject father's contention. As we said in *McInnis*, any provision that seeks to deprive the court of its authority or divest the court of its jurisdiction would indeed be unenforceable. 199 Or App at 234. However, the agreement here does not divest the court of jurisdiction or authority to modify child support. Rather, through their agreement, the parties have waived the right to seek that modification and, absent circumstances that make enforcement of the agreement contrary to public policy, such waiver provisions are enforceable. *Id.* at 235.[1]

---

[1] The trial court stated on the record that the stipulated judgment did not deprive the court of jurisdiction or authority to consider a modification of child support and said that such an agreement would be unenforceable.

In *Mock v. Sceva*, 143 Or App 362, 367, 923 P2d 1310 (1996), we upheld a provision in a stipulated judgment of dissolution that prohibited the father from seeking a modification of child support based on an increase in visitation, noting that the "[f]ather specifically agreed that he would not seek a modification of child support based on increased visitation." In a footnote, we cautioned that we did not mean to imply that such an agreement would always preclude the court from modifying child support based on increased visitation. "There may be circumstances where the enforcement of such an agreement could be contrary to public policy." *Id.* at 367 n 1. As *Mock* implies, there is no blanket policy-based prohibition of agreements waiving the right to seek modification of child support; rather, provisions must be considered in light of the circumstances.

It is true that enforcement of the agreement under the circumstances presented here results in a more generous child support award than the law might otherwise require. But, as the trial court concluded—and we agree—enforcement of the agreement not to seek modification of child support, under the circumstances of this case, does not violate public policy.

Affirmed.