Submitted December 30, 2013, convictions on Counts 7 and 22 reversed; remanded for resentencing; otherwise affirmed October 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERI LYNN ZIBULSKY,
aka Terri Lynn Zibulsky,
*Defendant-Appellant.*

Multnomah County Circuit Court
101134317; A149480

338 P3d 750

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Hadlock, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HADLOCK, P. J.

## HADLOCK, P J.

The state charged defendant with various crimes arising from her involvement in her elderly father's financial affairs, including first-degree theft, first-degree criminal mistreatment, and identity theft. She appeals the resulting judgment of conviction, asserting that the trial court erred in denying her motions for a judgment of acquittal (MJOAs) on three of the identity-theft counts for which a jury ultimately convicted her. *See* ORS 165.800 (stating crime of identity theft). Two of those counts were premised on the state's contention that defendant had unlawfully appropriated her father's identity when she withdrew money from two bank accounts that she and her father owned jointly and that, accordingly, were maintained in both of their names.[1] Defendant's withdrawal of funds from a third bank account that was maintained only in her father's name formed the basis of the other count at issue here. With respect to two of the counts, defendant argues that the identity-theft statute does not contemplate criminal liability for a person who conducts transactions on a bank account that is held in his or her own name, even if another person is a joint owner of the account and therefore shares that same bank-account information. Defendant separately contends that her father executed a power of attorney that authorized her to make each of the transactions and that she was entitled to judgments of acquittal on all three counts as a result. Because we agree with the first of those arguments and, because it is unpreserved, do not consider the second, we reverse and remand with respect to two of the challenged counts of conviction and otherwise affirm.

"We review the denial of an MJOA to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Rennells*, 213 Or App 423, 425, 162 P3d 1006 (2007). "[W]hen, as here, a defendant makes the MJOA at the close of the state's case, 'the appellate court must consider all the evidence and if it is sufficient to sustain the

---

[1] The parties both describe those two accounts as "joint" accounts and we accordingly do likewise, without implying any comment on whether the accounts met the legal definition of "joint account" set out in ORS 708A.455(3).

conviction, the defendant cannot complain that his motion for acquittal made at the close of the state's case was denied.'" *State v. Bilsborrow*, 230 Or App 413, 418-19, 215 P3d 914 (2009) (quoting *State v. Gardner*, 231 Or 193, 195, 372 P2d 783 (1962)). In accordance with that standard, the facts are as follows.

Defendant is the daughter of the victim, Sims. In the months after Sims's wife passed away in 2008, defendant assumed a degree of responsibility for his care, a process that included Sims executing a power of attorney in favor of defendant. At some point during that time period, defendant's name was added to a Sun Community Credit Union account (the Sun account) that had previously belonged to Sims's wife but that had passed to Sims at her death. Additionally, defendant opened a bank account at Chase Bank (the Chase account) for the ostensible purpose of helping to manage Sims's finances.[2] The Chase account, like the Sun account, was titled in both Sims's and defendant's names. Sims also maintained an individual account at Union Bank (the Union account) that was titled in his name only.

The three identity-theft counts at issue in this appeal involve transactions that defendant made on those three bank accounts (Counts 7, 22, and 24). In September 2008, defendant withdrew all funds from the Sun account and closed it (Count 7). In June 2009, defendant purchased airline tickets using a debit card tied to the Chase account (Count 22). In September 2009, defendant drafted a check on the Union account, payable to herself, and withdrew additional funds from that account using an ATM (Count 24). Referring to those transactions, the state's indictment alleged, in each of the three separate identity-theft counts, that defendant "did unlawfully, with intent to deceive and defraud, obtain, possess, transfer, create, utter and convert to defendant's own use [the] personal identification of [Sims]."[3]

---

[2] At trial, that account was referred to as both a Washington Mutual account and a Chase Bank account. We refer to it as the Chase account for simplicity's sake.

[3] Although there were two transactions in September 2009 that appeared to fit within the charging terms of Count 24, neither party asserts any need, in this appeal, to discern the precise factual basis for the conviction on Count 24.

Defendant moved for a judgment of acquittal on those three counts, among others, at the end of the state's case in chief. The trial court denied the motions, stating, "I believe that there is sufficient evidence from which a jury could return a verdict in favor of the State in the—viewing the evidence in the light most favorable to the State, and that the identity theft statute can be and should be interpreted to apply to the facts of this case." A jury convicted defendant of the three identity-theft counts at issue on appeal, as well as additional crimes that defendant does not challenge on appeal.

Defendant presents two distinct arguments for why the trial court erred in denying her MJOAs on the three identity-theft counts. First, with respect to Counts 7 and 22—those involving the transactions on the joint bank accounts—she contends that, as a matter of legislative intent, the identity-theft statute does not encompass a person's use of bank-account information that the person shares with another. Second, defendant contends that the power of attorney granted her the authority to make each of the transactions in question.

The trial court's denial of defendant's MJOAs involved a question of statutory interpretation, which we review for legal error. *State v. Bordeaux*, 220 Or App 165, 170, 185 P3d 524 (2008). Our task in that regard is to discern the legislature's intent, which we do by first examining the statute's text in context before considering any legislative history that we find pertinent to the analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Ultimately, "[w]e review the trial court's denial of an MJOA to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Jackson*, 212 Or App 51, 53, 157 P3d 239, *rev den*, 343 Or 206 (2007).

We begin with defendant's first argument, which pertains only to the denial of her MJOAs on Counts 7 and 22. The identity-theft statute provides, in pertinent part:

"(1)   A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains,

possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.

"* * * * *

"(4)   As used in this section:

"(a)   'Another person' means a real person, whether living or deceased, or an imaginary person.

"(b)   'Personal identification' includes, but is not limited to, any written document or electronic data that does, or purports to, provide information concerning:

"* * * * *

"(H) The identifying number of a person's depository account at a 'financial institution' or 'trust company,' as those terms are defined in ORS 706.008, or a credit card account;

"* * * * *

"(M)   A person's personal identification number."

ORS 165.800 (2011).[4] Defendant does not contend that the record is inadequate to support a jury finding that she possessed the "intent to deceive or to defraud" in making the transactions. Nor does she dispute that, in conducting each of the transactions, she "obtain[ed], possess[ed], transferr[ed], create[d], utter[ed] or convert[ed]" "personal identification"—*viz.*, bank-account information. Instead, defendant contends that the personal identification involved in Counts 7 and 22 was not that of "another person," as ORS 165.800 (2011) requires, because she was named as an account holder on the accounts underlying those charges (the Sun and Chase accounts). Pointing to the statute's text, she asserts that the reference to the

---

[4] In 2013, after the conclusion of the trial, the legislature amended the definition of "another person" in ORS 165.800(4)(a): "'Another person' means an individual, whether living or deceased, an imaginary person or a firm, association, organization, partnership, business trust, company, corporation, limited liability company, professional corporation or other private or public entity." *See* Or Laws 2013, ch 158, § 34. Neither party suggests that the amendment affects the analysis in this case. We cite the version of the statute that was in effect as of the time that the offenses were alleged to have been committed. *See State v. Flowers*, 136 Or App 555, 558, 902 P2d 624 (1995), *rev den*, 324 Or 513 (1997) ("[A] criminal defendant is, as a general rule, tried and punished under the laws that are in effect at the time the offense is committed.").

"personal identification of another person" reflects the legislative intent to impose criminal liability only where the personal identification at issue is that of a *different* or *distinct* person from 'the person' whose acts allegedly violate the statute." (Emphasis in original.) For its part, the state also points exclusively to the statute's text in support of its position, which is, at bottom, that "whether the identity thief might have the same 'personal identification' [as the victim] is irrelevant" for purposes of ORS 165.800 and that a person can be guilty of identity theft if that person "obtains, possesses, transfers, creates, utters, or converts" any bank-account information that the person shares with the putative victim.

Thus, the parties cast their arguments in terms of conflicting interpretations of the term "another person" as it is used in ORS 165.800. But we perceive, in those arguments, no meaningful difference in the parties' understandings about what those words mean. That is, both agree that Sims was "another person," and that the statute criminalizes the use of "another person['s]" "personal information" but not one's own "personal information." Instead, the crux of the parties' dispute lies in their competing characterizations of defendant's *acts*. The state is correct when it points out that—so far as the evidence reveals—the bank-identification information for the Sun and Chase accounts belonged as much to Sims ("another person") as it did to defendant and that she therefore necessarily used the "personal information" of "another person" when she drew off the account. When characterized that way, defendant's acts fall within the proscription of the statute. But defendant is equally correct when she points out that the "personal identification" at issue was as much hers as it was Sims's and that nothing in the statute proscribes a person from using his or her own personal information, as opposed to that of "another person." When characterized that way, defendant's acts do not fall within the statute.

We need not explore that abstract dispute about whose bank-account information defendant used, however, because, as both parties acknowledge, the gravamen of the crime of "identity theft" is the improper use by one person

of "another person's" *identity*.[5] *See* ORS 165.800(1) ("A person commits the crime of *identity theft* if * * *." (Emphasis added.)). That is, it is apparent in the statute's text what type of act the legislature intended to prohibit: the act of passing one's self off as "another person" through the use of a nonexclusive list of "personal information." The record in this case includes no evidence that defendant engaged in that type of act, *i.e.*, that she used any personal information that was not hers to use: She was named as a holder of the accounts. In other words, there is no evidence that defendant ever purported to be anyone other than herself. As defendant acknowledges, her improper use of those accounts or the funds therein could (and, in this case, did) give rise to certain other forms of criminal guilt. However, the fact that Sims shared the same bank-account information as defendant was entirely incidental to defendant's act of proffering that information to conduct transactions on the account. In view of ORS 165.800's patent purpose—to punish the misappropriation of "another person['s]" "personal information"—we find it implausible that the legislature intended to criminally penalize as "identity theft" an account holder's use of bank-account credentials that she shares with another.[6]

The state also attempts to cast the distinction in characterizations as a factual one—*i.e.*, whether, as a matter of historical fact, defendant was using her personal

---

[5] We employ, here and throughout this opinion, the word "use" as shorthand for the statutory list of prohibited acts ("obtains, possesses, transfers, creates, utters or converts").

[6] The state argues that the broad nature of the list of "personal information" in ORS 165.800(4)(b) indicates—through the very fact of its breadth—that the legislature was aware that certain types of the listed personal information would be shared, and yet did not create an exception for such shared information in the statute. Contrary to the state's position, however, we perceive that the breadth of the statute's definition of "personal information" militates in favor of our conclusion. We see no reason why, for instance, under the state's theory, a person who submitted a fraudulent loan application with her valid home address on it would not have committed identity theft by, say, "utter[ing]" the shared "personal identification" of her roommate. *See* ORS 165.800(4)(A) ("'[p]ersonal identification'" includes a "person's address[.]"). Where the fraudulent applicant has not purported to be anyone other than who she is, the fact that she happens to share an address with another person is a circumstance so far on the periphery of the fraudulent activity that we cannot conclude that the legislature intended to criminalize such conduct as "identity theft."

information or Sims's personal information when she made the transactions using the shared accounts—and argues that the record includes evidence sufficient to support a finding that she had used Sims's personal information. To be sure, we do not announce a rule that a person may never violate ORS 165.800 by using "personal information" related to a joint bank account. If there were some evidence, say, that two holders of the same account maintained separate "identifying number[s]" or separate "personal identification number[s]," and that a defendant had used the "personal information" of his fellow account holder in a prohibited manner, that act would seem to fall squarely within the prohibition of the statute. The difficulty for the state in this case, however, is that the record includes no relevant evidence about the transactions other than that defendant and Sims were both named on the bank accounts and that the transactions were made. That is, nothing indicates that defendant used "personal information"—the bank-account information—other than that which she had a legal right to use or that she represented, in any way, that she was someone other than who she was. From that state of the evidence, no reasonable juror could find that defendant had used Sims's "personal information" in violation of ORS 165.800. We conclude that the trial court erred in denying defendant's MJOAs on Counts 7 and 22.

That leaves the trial court's denial of defendant's MJOA on Count 24, concerning defendant's draws on the Union account. As noted, defendant contends that the power of attorney authorized her to make those transactions and that criminal liability under ORS 165.800 could not attach for that reason. Our review of the record, however, reveals that defendant did not make that argument to the trial court as a basis for granting any of her MJOAs, and we therefore decline to consider it here. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."); *State v. Lavadores*, 230 Or App 163, 170-71, 214 P3d 86 (2009) (declining, on appeal, to consider arguments

for reversing the denial of an MJOA when the defendant had not preserved those arguments at trial).

Convictions on Counts 7 and 22 reversed; remanded for resentencing; otherwise affirmed.