ALLEN, J. pro tempore, dissenting.
*71 Defendant was convicted, on stipulated facts, of identity theft under ORS 165.800. That statute provides: "A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts *35 to the person's own use the personal identification of another person."
The majority concludes that the evidence was insufficient to find that defendant intended to "defraud" anyone.[1] Because I interpret the meaning of defraud in a manner different from the majority, and because I believe the evidence was sufficient to prove defendant intended to defraud the teacher, I dissent.
A question of statutory interpretation is reviewed for legal error. State v. Thompson , 328 Or. 248, 256, 971 P.2d 879, cert. den. , 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999). Once that question is answered, we must view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
The key dispute on appeal is whether the state proved that defendant intended to "defraud" someone when he converted[2] to his own use the personal identification of the teacher. There is no dispute that defendant obtained and converted for his own use the teacher's personal identification, without her knowledge or consent, in an effort to reach out to high school girls, or that he intended to exploit the students' trust in that teacher to gain "greater access" to the students. There is also no dispute that while pretending to be the teacher online, he "flirted" with the students and sent sexual messages. His stated ultimate goal was to "gain information about a woman he once dated[.]"
*72 As set out below, I conclude that the record was sufficient to support the finding that defendant intended to "defraud" the teacher, in that he intended to interfere with her legal right in her reputation, when he converted her identity for his own purposes.
In State v. Alvarez-Amador , 235 Or.App. 402, 406-07, 232 P.3d 989 (2010), we first discussed the meaning of "defraud" under ORS 165.800. After considering the common meaning of "defraud" and "fraud" by looking to the dictionary definitions, this court defined defraud to mean to cause injury or loss to another person by deceit. Id. at 406, 232 P.3d 989. See also State v. Gray , 286 Or.App. 799, 401 P.3d 1241 (2017), rev. den. , 362 Or. 482, 412 P.3d 199 (2018) (stating that under ORS 164.085, to "defraud is to cheat others out of their rightful owner-ship") (internal quotation marks omitted); State v. Reynolds , 246 Or.App. 152, 159, 265 P.3d 22 (2011) (defraud means "to take or withhold from [another] some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception").
In Alvarez-Amador , we explained that the "injury" in ORS 165.800 is the violation of another person's legal right for which the law provides a remedy. 235 Or.App. at 407, 232 P.3d 989. Although fraud, or to defraud, is generally thought of as solely a tort impairing a legal right or interest, when the conduct is willful it can be, and has been, criminalized. Id . In the enactment of ORS 165.800, the legislature criminalized fraud in the identity theft statute to protect the true holders of the identification, who are harmed by the risk of loss by the dispossession of their identity. State v. Mullen , 245 Or.App. 671, 678, 263 P.3d 1146 (2011), rev. den. , 352 Or. 25, 281 P.3d 261 (2012).
As I read these cases, when intent to defraud is alleged, essentially deceit is the manner by which one effectuates the fraud; the fraud being the intent to injure the victim's legal right or interest.
One could argue that, if "defraud" and "deceive" are one and the same, there would be no reason to add "deceit" to the statute, as the legislature did in 2001, because such an addition would be superfluous. But, Mullen differentiates *73 the two: Deception, in the context of identity theft, "denotes an attempt to obtain some benefit to which the deceiver is not lawfully entitled. Fraud, as used in this context, includes misrepresentations intended *36 to cause injury to another's legal rights or interests." (Internal citations omitted.) Id. at 677, 263 P.3d 1146.
Moreover, Mullen instructs:
"The statute does not require a completed act of deception or fraud to commit the crime; rather, it requires only that one of the listed acts (involving the appropriation or use of another's identification) be done with a general 'intent to deceive or to defraud.' Consequently, the crime can be committed without any person being actually deceived or defrauded."
Id . (quoting State v. Alvarez-Amador , 235 Or.App. at 406-07, 232 P.3d 989 ; emphasis in Alvarez-Amador ). If a defendant uses deception with the general intent to cause injury to another's legal right or interest, the defendant has, with intent, defrauded that person under ORS 165.800.
The improper use by a person of someone else's identity is the gravamen of the crime of identity theft. State v. Zibulsky , 266 Or.App. 633, 638-39, 338 P.3d 750 (2014). "[P]assing one's self off as 'another person' " through the use of that person's personal information is precisely what legislature intended to prohibit. Id. at 639, 338 P.3d 750. The legislature did not limit the type of legal right or interest that could be implicated.
Relying on Mullen , the state proceeded on the theory that defendant acted with a conscious objective to cause injury to the teacher's legal interest in her trustworthy reputation. The majority states that Mullen does not stand for the proposition that one can defraud another person by creating a risk of injury to their reputation. That is exactly what Mullen holds, verbatim, concluding that "victim" under ORS 165.800 includes a person for whom the misuse of the person's identity could cause a risk of economic or reputational harm . Id . at 678, 263 P.3d 1146.
The issue this court addressed in Mullen was whether each of the persons whose identity the defendant *74 possessed were individual victims for purposes of merger of the relevant convictions. Of course, there would be no "victim," and therefore no conviction, if there were no "crime."[3] Nonetheless, the majority maintains that Mullen solely informs when the act (misappropriation in Mullen ) occurred. That declaration misses the point.
In Mullen , to answer whether separate convictions were justified based on the possession of three separate individual's identity, this court held that the defendant had to have had an intent to deceive or defraud, effectuated by one of the types of acts described in the statute, and that the crime is complete when the person whose identity was taken is at risk of reputational injury or economic loss. Id . at 678-79, 263 P.3d 1146. In other words, a defendant can be convicted of the crime even if no person was actually deceived or defrauded. Id . at 677-78, 263 P.3d 1146.
Like here, the only evidence in Mullen related to the persons whose identity was taken was that the defendant possessed their documents and notes containing their personal identifying information. Id . at 674, 263 P.3d 1146. There was no evidence that the defendant had taken any other action as concerned those three individuals. In Mullen , we rejected the defendant's argument that because he did not intend to deceive or defraud the three individuals, they were not "victims" under the law. Id .
The court in Mullen could not have reached the conclusion that it did-that the persons whose identity was taken were each victims-unless it first concluded that the defendant in that case intended to have deceived or defrauded someone, and the only persons to which the charge applied were the three persons whose identity the defendant had in his possession. So while it is true that the crime is not complete (the "when" to which the majority refers) until the person whose identity has been taken is at risk of reputational injury, a person whose identity has been misappropriated is a victim once the risk of reputational injury is extant. See id . at 678, 263 P.3d 1146.
*75 I understand that Mullen was not a case about whether a fraud is perpetrated upon *37 an identity owner based on the injury, or potential injury, to that person's reputation. The primary point the court was trying to make in Mullen is that the reputation need not actually be injured (or the financial loss have occurred) to establish the elements of the crime. But it cannot be ignored that there were no other persons involved in the course of conduct undertaken by the defendant in possessing the three victims' identities or that in Mullen one's good reputation was included as a type of legal right or interest protected by the statute sufficient to sustain the separate convictions.
That we in Mullen included reputational harm or injury as a legal right or interest should be unsurprising. While it is true that before Mullen no case concerning the identity theft statute articulated specifically that one's reputation constituted a legal right or interest, conserving one's interest in one's reputation has long been held as a right for which there is an action for damages under common law. Adamson v. Bonesteele , 295 Or. 815, 821-22, 671 P.2d 693 (1983) ; see also Noble v. Board of Parole , 327 Or. 485, 496, 964 P.2d 990 (1998).
A teacher, this teacher, has a legal interest in maintaining her positive reputation with her students. One's interest in reputation is "the interest in acquiring, retaining and enjoying a reputation as good as one's character and conduct warrant." Coe v. Statesman-Journal Co. , 277 Or. 117, 120, 560 P.2d 254 (1977). If a teacher who has enjoyed an honorable reputation is then perceived to be flirting with and sending sexual messages to students, that reputation is at grave risk of harm. While it is not clear from the stipulated facts whether the students actually believed it was the teacher who had sent the messages, as noted above, it is immaterial whether the risk to the teacher's reputation was realized. The teacher's highly regarded reputation was not in question. The teacher had an interest in safeguarding that reputation.
The majority highlights defendant's stated purpose, or intent regarding what he intended to do with the stolen identity after he obtained it. It is not that his conduct in *76 messaging the students is irrelevant-it's actually quite relevant to defendant's state of mind as he was converting the teacher's identity. See Gray , 286 Or.App. at 809, 401 P.3d 1241 (stating that the conduct after the taking may be probative of intent). But, because the majority opinion focuses on defendant's stated purpose as to the students, it misses the mark as to defendant's intent as to the teacher.
As defined in ORS 161.085(7), a person acts "with intent" when that person "acts with a conscious objective to cause the result or to engage in the conduct so described." I would conclude also that the evidence in this case, viewed in the light most favorable to the state, supports defendant's conviction of identity theft in that a reasonable factfinder could find that defendant acted with the conscious objective to impugn the teacher's reputation in order to reach his own purposes.
There can be no doubt defendant knew he was using the teacher's identity and not his own. Defendant acknowledges the teacher did not consent to have her information stolen by him or to allow him to create a fake profile using her identity. That the teacher did not know this theft and misuse was occurring does not vitiate that it was occurring; indeed her lack of knowledge demonstrates that defendant was engaged in a deceit in the taking of it. I think it is fair to infer from the evidence that he knew the person whose identify he was converting was a teacher. He admitted that he hoped to mislead the students into believing he was their teacher by use of her identity (photo, first name, and a Facebook page designed to look like it was hers). He made misrepresentations to the students when he concealed his own identity by attempting to make it appear that it was the teacher contacting to them from the fake Facebook page. It reasonably can be inferred he chose the teacher because the girls trusted her, which is to say that she had a positive reputation with them, so he could gain access to the girls-the corollary being he himself did not possess the prerequisite reputation to enjoy such access.
The evidence is sufficient to demonstrate that defendant intentionally (with the conscious objective to impugn the teacher's reputation) converted to his own use the teacher's *38 *77 identity and passed himself off as the teacher in a manner that put her reputation among her students at risk. Because I conclude the state met its burden of proof, I would affirm the trial court, and, therefore, I dissent.

The dissent's assertion 291 Or.App. at 70-71, 418 P.3d at 34-35 (Allen, J. pro tempore, dissenting) that it arrives at a different meaning of "defraud" is incorrect. We define defraud exactly as the dissent does. We disagree on the more specific issue of what constitutes legally sufficient evidence of intent to defraud.

Here, the state omitted "deceive" and included "defraud" in the language of the charge.

State v. Medina , 357 Or. 254, 271, 355 P.3d 108 (2015), notes that "conversion of property requires a serious act of interference with the owner's rights." (Internal quotation marks omitted).

" 'Victim' means any person * * * to have suffered direct financial, psychological or physical harm as a result of a crime * * *." Or. Const., Art. I, § 42 (6)(c).