Argued and submitted March 12, 2010, affirmed March 2, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NOE GARCIA MONCADA,
aka Noe Garcia,
aka Noe Moncado Garcia,
aka Noe Moncada,
aka Noe Garcia-Moncada,
aka Noe Moncada-Garcia,
*Defendant-Appellant.*

Coos County Circuit Court
07CR1362; A138282

250 P3d 31

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who pleaded guilty to two counts of failure to perform the duties of a driver to injured persons, ORS 811.705, appeals the resulting judgment, assigning error to (1) the trial court's failure to merge his convictions and (2) the court's imposition of consecutive sentences. Defendant contends that, where, as here, multiple people are injured or killed in a single accident, each person is not a separate "victim" for purposes of ORS 811.705, commonly known as felony hit and run.[1] As amplified below, we reject that premise and conclude that each person injured in a single accident is a separate "victim" for purposes of ORS 811.705. Accordingly, we affirm.

Defendant pleaded guilty to two counts of failure to perform the duties of a driver to injured persons as described in the indictment:

"COUNT 3:

"The said defendant, on or about the 16th day of October, 2007, in Coos County, Oregon, being the driver of a vehicle being operated on premises open to the public, which vehicle was involved in an accident that resulted in the death of Marilyn Vance, did unlawfully and knowingly fail to remain at the scene of the accident until defendant had rendered reasonable assistance to Marilyn Vance, a person injured in the accident;

"COUNT 4:

"The said defendant, on or about the 16th day of October, 2007, in Coos County, Oregon, being the driver of a vehicle being operated on premises open to the public, which vehicle was involved in an accident that resulted in the death of Dallas Vance, did unlawfully and knowingly fail to remain at the scene of the accident until defendant had rendered reasonable assistance to Dallas Vance, a person injured in the accident[.]"[2]

---

[1] The text of the statute is set out below, 241 Or App at 207-08.

[2] Defendant was also charged with two additional counts of failure to perform the duties of a driver to injured persons pursuant to ORS 811.705. Those counts alleged that, as to each of the Vances, defendant failed to "immediately stop the vehicle at the scene of the accident or as close thereto as possible and remain at the scene." Those counts were ultimately dismissed and are not at issue on appeal.

(Capitalization in original.) Other than defendant's acknowledgement that the allegations in the indictment were true, there were no other facts established at defendant's plea hearing.

At sentencing, defendant contended that the Vances were not the "victims" of the criminal conduct to which he had pleaded guilty. Instead, defendant asserted that there was only a single "victim" with respect to that conduct—*viz.*, the State of Oregon—and, for that reason, his convictions should merge. Further and relatedly, defendant contended that, if the convictions did not merge, his sentences should be concurrent. According to defendant, the Vances were not "victims" for purposes of ORS 137.123 because there was no evidence that defendant's criminal conduct—that is, leaving the scene of the accident without rendering aid—injured the Vances.

The trial court disagreed with defendant, concluding that each count to which defendant pleaded guilty concerned a separate "victim." Accordingly, on Count 3 and on Count 4 the trial court imposed a departure sentence of 36 months' imprisonment followed by 36 months' post-prison supervision. The sentence on Count 4 was consecutive to the sentence imposed on Count 3. Defendant appeals.

On appeal, defendant reiterates that the trial court erred in failing to merge his convictions and, alternatively, in imposing consecutive sentences.[3] As framed by defendant,

---

Further, defendant was charged with an additional "count" that did not allege additional culpable conduct but, instead, merely alleged various departure factors. No issues concerning that "count" are raised on appeal.

[3] The state acknowledges that, under *State v. Sumerlin*, 139 Or App 579, 913 P2d 340 (1996), defendant may appeal pursuant to ORS 138.050(1), contending that the trial court erred in failing to merge his convictions. Nevertheless, the state contends that *Sumerlin* was "wrongly decided." However, we are not persuaded by the state's arguments that our decision in *Sumerlin* was plainly wrong. *See Newell v. Weston*, 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den*, 329 Or 318 (1999) (noting that "courts should adhere to the doctrine of *stare decisis* unless error is plainly shown to exist" (internal quotation marks omitted)). Accordingly, we decline the invitation to revisit our reasoning in that case. *Cf. State v. Salvador*, 237 Or App 424, 433, 241 P3d 324 (2010) (relying on *Sumerlin* in rejecting state's argument "that [the] defendant's contention [concerning the merger of certain convictions] is not reviewable on appeal, because he pleaded guilty"); *State v. Bowers*, 234 Or App 301, 305-06, 227 P3d 822, *rev den*, 348 Or 621 (2010) (rejecting request to limit the holding in *Sumerlin*; reasoning that "[a] disposition that includes three

the legal predicate underlying both of his contentions is that the text and context of ORS 811.705 "reflects a single legislative concern"—*viz.*, "like the rest of the traffic code, the statute was intended to *protect the public generally*"—and, consequently, individual "persons injured in an accident that precedes a motorist's flight are not victims of the crime." (Emphasis added.) Invoking the Supreme Court's decision in *State v. Glaspey*, 337 Or 558, 100 P3d 730 (2004), and our decision in *State v. Luers*, 211 Or App 34, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007), defendant reasons that an individual's injuries are merely "collateral or secondary consequence[s], which [are] necessary to the statutory definition of felony hit and run" and "constitute[ ] no more than a theory under which misdemeanor hit and run becomes subject to the enhanced penalties for felony hit and run."[4] (Internal quotation marks omitted.)

■    We first address whether the trial court erred in failing to merge defendant's convictions. The statute governing the merger of convictions is ORS 161.067. As pertinent to this case, ORS 161.067(2) precludes the merger of convictions under certain circumstances. Specifically, that statute provides that, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more *victims*, there are as many separately punishable offenses as there are victims." (Emphasis added.)

Here, defendant asserts that his conduct violated only one statutory provision and that his convictions "stem from the same accident"—that is, according to defendant, they "stem from a single criminal episode (*i.e.*, from the same act and transaction)." Accordingly, the issue reduces to whether each of the Vances was a separate "victim" for purposes of ORS 161.067(2).

In *Glaspey*, the Supreme Court concluded that "ORS 161.067(2) uses the term 'victims' to describe the category of

---

convictions where it should only include one conviction contains a disposition that exceeds the maximum allowable by law").

[4] The analysis that follows addresses that predominate contention. Defendant also advances several collateral or subsidiary arguments, which we reject without discussion.

persons who are victims within the meaning of the specific substantive statute defining the relevant offense." 337 Or at 563. Thus, the proper focus of our analysis in this case is ORS 811.705, the statute that defines the crime of felony hit and run, which provides, in part:

"(1)  A person commits the offense of failure to perform the duties of a driver to injured persons if the person is the driver of any vehicle involved in an accident that results in injury or death to any person and does not do all of the following:

"(a)  Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this paragraph shall be made without obstructing traffic more than is necessary.

"(b)  Remain at the scene of the accident until the driver has fulfilled all of the requirements under this subsection.

"(c)  Give to the other driver or surviving passenger or any person not a passenger who is injured as a result of the accident the name and address of the driver and the registration number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle.

"(d)  Upon request and if available, exhibit and give to the persons injured or to the occupant of or person attending any vehicle damaged the number of any document issued as official evidence of a grant of driving privileges.

"(e)  Render to any person injured in the accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

"(f)  Remain at the scene of an accident until a police officer has arrived and has received the required information, if all persons required to be given information under paragraph (c) of this subsection are killed in the accident or are unconscious or otherwise incapable of receiving the information. The requirement of this paragraph to remain at the scene of an accident until a police officer arrives does not apply to a driver who needs immediate medical care, who needs to leave the scene in order to secure medical care

for another person injured in the accident or who needs to leave the scene in order to report the accident to the authorities, so long as the driver who leaves takes reasonable steps to return to the scene or to contact the nearest police agency."

Because ORS 811.705 does not expressly use the term "victim," our task, as the parties acknowledge, is to determine whether the "injured persons" referenced in the statute qualify as "victims" for purposes of ORS 811.705. In resolving that issue, we adhere to the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), as amplified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). In general, "we examine the text and context of the statute, as well as any legislative history offered by the parties that, in the court's determination, is pertinent."[5] *State v. Bassett*, 234 Or App 259, 265, 228 P3d 590, *rev den*, 348 Or 461 (2010).

ORS 811.705 is "one of several statutes describing the duties that a motor vehicle driver must perform when involved in an accident." *State v. Hval*, 174 Or App 164, 169, 25 P3d 958, *rev den*, 332 Or 559 (2001).[6] Although the statute imposes numerous and varied duties on a driver who injures one or more persons in an accident, they all further a single, overarching legislative purpose—that is "protecting injured persons." *State v. Hamlett*, 235 Or App 72, 78, 230 P3d 92 (2010). *See also State v. Corpuz*, 49 Or App 811, 820, 621 P2d 604 (1980) (describing similar policy served by predecessor statute). Specifically, in *Hamlett*, we explained that it is "readily apparent from the statutory text" that "the provisions of ORS 811.705(1) are plainly intended to ensure aid to injured persons at the scene of an accident, preserve evidence

---

[5] The parties have not proffered any legislative history.

[6] Specifically, in *Hval*, we explained:

"The legislature has organized the offenses by type of damage or injury and the accompanying penalty. ORS 811.700 identifies a driver's duties when an accident results in property damage and makes the offense a Class A misdemeanor. ORS 811.705 defines a driver's duties for an accident that results in injury or death to a person and makes the offense a Class C felony. Finally, ORS 811.710 describes a driver's duties when the driver knowingly strikes and injures a domestic animal and makes the offense a Class B traffic infraction."

174 Or App at 169.

pertaining to injury-producing accidents, and facilitate communication in the exchange of information concerning claims made following such an accident." 235 Or App at 78.

In light of that purpose, it follows that the gravamen of the crime defined by ORS 811.705 is "leaving the scene without providing information or assistance." *State v. Kappelman*, 162 Or App 170, 174, 986 P2d 603 (1999). More precisely, the gravamen of the crime is a driver's failure to perform the statutory duties owed to a person injured in the accident.

With the purpose of the statute and the gravamen of the crime so understood, the issue in this case may be precisely framed: Does the person to whom a driver owes statutory duties—that is, an injured person—qualify as a "victim" for purposes of ORS 811.705? In answering that question, the Supreme Court's decision in *Glaspey* and our decision in *Luers* are instructive.

In *Glaspey*, the defendant assaulted his wife. 337 Or at 560. The couple's two children witnessed the assault. *Id.* The defendant was convicted of "two counts of felony fourth-degree assault[, ORS 163.160(3)(c),[7]] on the theory that each of the two child witnesses was a victim of the crime and that [the] defendant had committed a separate felony offense with respect to each child." *Id.* On appeal, the defendant "assign[ed] error to the trial court's decision to enter two convictions for a single assault" and contended, "in particular,

---

[7] ORS 163.160 provides, in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the fourth degree is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"* * * * *

"(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim[.]"

that the two child witnesses were not 'victims,' either for purposes of the crime that ORS 163.160(3)(c) defines or for purposes of ORS 161.067(2)." *Id.* at 561. We disagreed with the defendant and affirmed the separate convictions. *Id.*

The Supreme Court reversed. The court held that, for purposes of ORS 163.160, the "victim" of the assault "is the person who is directly and physically injured by an assault." *Id.* at 565. The court noted that its holding was consistent with the use of the term 'victim' throughout the substantive part of the criminal code," reasoning that, "[o]rdinarily, when the term 'victim' is used in a statute that defines a criminal offense, it is used in the precise sense of a person who suffers harm that is an element of the offense." *Id.* Accordingly, the court concluded that the defendant's children were not "victims" of the assault and, thus, that the trial court had erred in failing to merge the defendant's two convictions. *Id.* at 561, 567.

Thereafter, we applied the principles underlying the Supreme Court's decision in *Glaspey* in our decision in *Luers*. In that case, the defendant was convicted of, *inter alia*, three counts of first-degree arson, ORS 164.325 (1999),[8] and two counts of attempted first-degree arson, ORS 161.405; ORS 164.325. *Luers*, 211 Or App at 36. As pertinent to our discussion here, the indictment alleged that the defendant damaged the property of a single owner even though he recklessly placed a person, as well as different pieces of protected property, in danger of injury or damage. *Id.* at 67.

One of the issues that we resolved on appeal was whether merger was precluded because each of the counts of arson and attempted arson involved different "victims." In

---

[8] ORS 164.325 (1999), the version of the statute that we applied in *Luers*, provided, in part:

"(1) A person commits the crime of arson in the first degree if, by starting a fire or causing an explosion, the person intentionally damages:

"* * * * *

"(b) Any property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage[.]"

In this opinion, our references to ORS 164.325 are to the 1999 version.

determining who qualified as a "victim" for purposes of first-degree arson, we reasoned:

> "Unlike the offense statute at issue in *Glaspey*, ORS 164.325(1)(b) does not use the term 'victim.' Rather, by its terms, the conduct that is criminalized primarily is conduct directed at property. Nevertheless, ordinarily, a victim is a person. Where the text of ORS 164.325(1)(b) indicates that the target of the criminal conduct is property and where a victim for the purpose of ORS 161.067(2) ordinarily is a person, it is reasonable to conclude that, for the purpose of ORS 161.067(2), the victim of the crime of first-degree arson as provided in ORS 164.325(1)(b) is the owner of the property.

> "It is true that commission of the crime of first-degree arson under ORS 164.325(1)(b) also requires that the conduct of intentionally damaging property recklessly place another person in danger of physical injury or place protected property—again, property customarily occupied by people, ORS 164.305(1)—in danger of damage. * * * [W]e conclude that the element of recklessly placing persons or protected property in danger is a collateral or secondary consequence (albeit necessary to the statutory definition of first-degree arson) of the act of intentionally damaging property. It therefore is comparable to the requirement, in the felony fourth-degree assault statute at issue in *Glaspey*, that a child witness the assault. Accordingly, it is consistent with the court's reasoning in *Glaspey*, as well as with the text of ORS 164.325(1)(b), to conclude that the entity that is, in effect, directly and physically injured by the crime of arson is the owner of the intentionally damaged property."

*Luers*, 211 Or App at 65-66 (citations and internal quotation marks omitted).

It followed from that reasoning that ORS 161.067(2) did not preclude the merger of the defendant's convictions for arson because the indictment alleged that the defendant damaged the property of a single owner even though he recklessly placed a person, as well as different pieces of protected property, in danger of injury or damage. *Id.* at 67. A similar analysis applied to the defendant's convictions for attempted arson. *Id.* Ultimately, we concluded that "the trial court erred in failing to merge [the] defendant's three arson convictions into a single conviction and in failing to merge his two attempted arson convictions into a single conviction." *Id.*

■ We glean a single, salient principle from *Glaspey* and *Luers*, which informs the outcome in this case: Where the statute defining a crime does not expressly identify the person who qualifies as a "victim," the court examines the statute to identify the gravamen of the crime and determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription.

Consistently with that principle and as previously explained, the gravamen of ORS 811.705 is the driver's failure to perform statutorily mandated duties. Given that gravamen and consistently with the statute's design, it is patent that the legislature intended to directly protect the class of persons to whom those duties are owed. Bluntly: When a driver fails to perform the statutorily mandated duties, the "victim" is the person who does not, among other things, receive "reasonable assistance" as prescribed in ORS 811.705(1)(e).

Here, as previously described, Marilyn Vance and Dallas Vance were the persons to whom defendant owed the duties prescribed by ORS 811.705. Defendant failed to perform his statutory duty to render "reasonable assistance" to each of them pursuant to ORS 811.705(1)(e). For that reason, each of the Vances was a separate "victim." Accordingly, merger of defendant's two convictions for failure to perform the duties of a driver to injured persons was precluded pursuant to ORS 161.067(2) because there were "two or more victims."

■ Having concluded that the trial court properly entered separate convictions, we turn to defendant's alternative contention that the trial court erred in making the sentences consecutive. As previously noted, defendant posits that the legal predicate underlying that contention is whether each of the Vances qualifies as a "victim" for purposes of ORS 811.705. We agree with defendant that our interpretation of ORS 811.705 controls the determination whether the trial court properly imposed consecutive sentences. For the reasons explained below, we conclude that the trial court did not err in imposing consecutive sentences in this case.

ORS 137.123 governs the imposition of consecutive sentences. As pertinent here, that statute provides, in part:

"(5)   The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"* * * * *

"(b)   The criminal offense for which a consecutive sentence is contemplated * * * caused or created a risk of causing loss, injury or harm to a different *victim* than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

(Emphasis added.) For purposes of ORS 137.123,

"except as otherwise specifically provided or *unless the context requires otherwise*, 'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime * * *."

ORS 131.007 (emphasis added).

Here, we have concluded that each of the Vances qualifies as a separate "victim" for purposes of ORS 811.705, the substantive statute defining the crimes to which defendant pleaded guilty. Given that understanding of the substantive statute, the operative "context," ORS 131.007, precludes application of the generic definition of "victim" in ORS 131.007. Accordingly, the trial court properly imposed consecutive sentences under ORS 137.123.

Affirmed.