**STATE OF OREGON,**
*Plaintiff-Appellant,*

*v.*

**ARNOLD WELDON NIX,**
*Defendant-Respondent.*

Umatilla County Circuit Court
CRH090155; A145386

283 P3d 442

Jamie K. Contreras, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

David J. Celuch argued the cause and filed the brief for respondent.

Scott A. Heiser filed the brief *amicus curiae* for Animal Legal Defense Fund.

Before Brewer, Presiding Judge, and Haselton, Chief Judge.*

---

* Haselton, C. J., *vice* Gillette, S. J.

BREWER, P. J.

**BREWER, P. J.**

The state appeals from a judgment merging guilty verdicts against defendant that the jury rendered on 20 counts of second-degree animal neglect, ORS 167.325, into a single conviction under ORS 161.067(2).[1] The trial court concluded that defendant's repeated violations of ORS 167.325 did not involve "two or more victims" because animals are not victims under ORS 161.067(2). Accordingly, this case presents the question of whether an animal described in ORS 167.325 is a victim for purposes of ORS 167.067(2). We conclude that it is. Accordingly, there are as many victims as there are violations of that statute in this case, and the trial court erred in merging the guilty verdicts into a single conviction.

The relevant facts are undisputed. Acting on a tip, police officers entered defendant's farm and found dozens of emaciated animals, mostly horses and goats, and several animal carcasses in various states of decay. Defendant owned those animals. Defendant was indicted on 23 counts of first-degree animal neglect, ORS 167.330, and 70 counts of second-degree animal neglect, ORS 167.325. Each separate count identified a different animal and charged conduct by defendant toward that animal. All of the separate counts were alleged to have occurred within the same span of time. A jury convicted defendant of 20 counts of second-degree animal abuse.

At defendant's sentencing hearing, the state asked the trial court to impose 20 separate convictions because the jury had found defendant guilty of neglecting 20 different animals. Accordingly, the state argued, the convictions "do not merge based on [ORS 161.067] (1), (2) and (3)." The trial court disagreed and merged the guilty verdicts into a single conviction, explaining that

> "[ORS 161.067(2)] talks about—although violating only one statutory provision, it involves two or more victims.

---

[1] ORS 161.067(2) provides, in pertinent part:

"When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."

In this case, I agree with the defendant's position that the animals are not victims, as defined by the statute; by the ORS 161.067(2).

"* * * I don't think that [ORS 161.067(3)] applies because the animals are not victims under the definition of the statute requiring that to be persons."

Defendant was sentenced to 90 days in jail and three years of bench probation; the trial court suspended imposition of the jail sentence, and the state appealed. ORS 138.222(4)(a).[2]

The state renews its argument on appeal, contending that, for purposes of the second-degree animal neglect statute, ORS 167.325, an animal is a "victim" under ORS 161.067(2).[3] The state relies on *State v. Glaspey*, 337 Or 558, 563, 100 P3d 730 (2004), where the Supreme Court explained that the term "victim" in ORS 161.067(2) draws its meaning from the underlying substantive criminal statute that the defendant violated. According to the state, a proper focus on the statute, in context, makes it clear that animals are victims of the crime of animal neglect. Defendant replies that the term "victim" in ORS 161.067(2) is limited to "persons," relying on definitions of "victim" from a dictionary and from ORS 131.007(2) and Article I, section 44(3), of the Oregon Constitution. Defendant reasons that, because "animals are not defined as persons under Oregon law[,] * * * animals are not victims." Defendant argues that, in *Glaspey*, "the Supreme Court recognized that victims are people" and "that just because some harm is suffered in a criminal offense doesn't mean [that] the party suffering the harm is automatically a 'victim' for purposes of Oregon law."

The parties' arguments present a question of the proper interpretation of ORS 167.325. As explained below, because the meaning of the term "victim" in ORS 161.067(2)

---

[2] ORS 138.222(4)(a) provides:

"In any appeal, the appellate court may review a claim that:

"(a) The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence[.]"

[3] The state has not renewed its argument with regard to ORS 161.067(1) and ORS 161.067(3); accordingly, we do not address the applicability, if any, of either subsection.

is governed by the legislature's intent with regard to the underlying substantive criminal statute, our goal is to determine the intended meaning of ORS 167.325 by examining its text in context along with relevant legislative history and, if necessary, other aids to construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Because we are obligated to ascertain the proper construction of a legislative enactment, we are not confined in our analysis to the meanings that the parties proffer. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

ORS 167.325(1) provides:

"A person commits the crime of animal neglect in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in such person's custody or control."

"Animal" is defined by ORS 167.310(1) as "any nonhuman mammal, bird, reptile, amphibian or fish." "Minimum care" is defined by ORS 167.310(7) as "care sufficient to preserve the health and well-being of an animal and, except for emergencies or circumstances beyond the reasonable control of the owner, includes, but is not limited to" an extensive list of requirements including, among other things, food, water, shelter, veterinary care and access to open space. *See* ORS 167.310(7)(a) - (f)(B).

As we recently observed in *State v. Torres*, 249 Or App 571, 575, 277 P3d 641 (2012), "the meaning of 'victim' is not fixed; rather, it is context specific." In *Glaspey*, the court held that, because ORS 161.067(2) applies only where a defendant's conduct violates "only one statutory provision," ORS 161.067(2) "invests the term 'victim' with the same meaning that it has for the relevant substantive statutory provision that defines the offense." 337 Or at 567; *see also State v. Mullen*, 245 Or App 671, 675, 263 P3d 1146 (2011), *rev den*, 352 Or 25 (2012) ("In determining whether defendant's conduct involved 'two or more victims' under ORS 161.067(2) we look to the substantive statute that defines the crime."); *State v. Sanchez-Alfonso*, 224 Or App 556, 198 P3d 946 (2008), *rev den*, 346 Or 258 (2009) (same).

ORS 167.325 does not expressly identify the victim of a violation of the prohibition of animal neglect. Neither do any of the related statutes that prohibit more serious instances of neglect. *See, e.g.,* ORS 167.330 (animal neglect in the first degree); ORS 167.320 (animal abuse in the first degree); ORS 167.333 (sexual assault of an animal). Accordingly, "'[we] examine[ ] the statute to identify the gravamen of the crime and determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription.'" *Torres,* 249 Or App at 577 (quoting *State v. Moncada,* 241 Or App 202, 212, 250 P3d 31 (2011), *rev den,* 351 Or 545 (2012)) (brackets in *Torres*).

Defendant argues that, in applying that test, we must adhere to the ordinary meaning of "victim," which is "person." *See, e.g., Webster's Third New International Dictionary* 2550 (unabridged ed 2002); *Black's Law Dictionary* 1598 (8th ed 2004). Defendant observes that the legislature and the people have adopted that ordinary meaning in ORS 131.007(2) and Article I, section 44(3), of the Oregon Constitution. ORS 131.007(2) provides, in part:

"As used in ORS 40.385, 135.230, 135.970, 147.417, 147.419 and 147.421 and in ORS chapters 136, 137 and 144, except as otherwise specifically provided or unless the context requires otherwise, 'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime and includes, in the case of a homicide or abuse of corpse in any degree, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the criminal defendant be considered a victim."

Article I, section 44(3), provides, in part:

"As used in this section, 'victim' means any person determined by the prosecuting attorney to have suffered direct financial, psychological or physical harm as a result of a crime and, in the case of a victim who is a minor, the legal guardian of the minor. In the event no person has been determined to be a victim of the crime, the people of Oregon, represented by the prosecuting attorney, are considered to be the victims. In no event is it intended that the criminal defendant be considered the victim."

We readily acknowledge those points. Moreover, we also note that, where the legislature has defined or used the term victim throughout the criminal code, whether for purposes of substantive or procedural pronouncements, it typically has expressly or implicitly adopted the ordinary meaning of victim.[4] In addition, to date, most of our decisions under ORS 161.067(2) have concluded that crimes have a human victim for the purpose of merger under that statute. *See, e.g., Mullen,* 245 Or App at 677 ("[T]he victims of identity theft include persons who suffer a risk of loss from the exposure of their identification."); *State v. Williams,* 229 Or App 79, 84, 209 P3d 842, *rev den,* 347 Or 44 (2009) (the "victim" of robbery is the person against whom force is used or threatened); *Sanchez-Alfonso,* 224 Or App at 562 (for purposes of ORS 161.067(2), the "victim" of a burglary is the person who possesses the property right in the building the defendant entered); *State v. Luers,* 211 Or App 34, 65, 154 P3d 688, *adh'd to as modified on recons,* 213 Or App 389, 160 P3d 1013 (2007) (noting that "ordinarily a victim is a person"); *State v. Graves,* 92 Or App 642, 646, 759 P2d 1121 (1988) (concluding, pre-*Glaspey* that "the intended victims of a conspiracy to commit particular crimes are included within the meaning of 'victims' in ORS 161.067(2)").

However, to state the obvious: none of the provisions upon which defendant relies, nor any others that we have found, expressly or implicitly provides that the victim of a violation of the animal neglect statutes is a person. In fact, the provisions upon which defendant relies—ORS 131.007(2) and Article I, section 44(3)—both cabin their definitions

---

[4] *See, e.g.,* ORS 153.090 (district attorney notification of court dates to victim); ORS 161.325 (findings on whether victim wishes notification); ORS 161.326 (PSRB notification to victim); ORS 147.005(15) (definition for purpose of compensation of crime victims, paragraph (a) lists various "persons" and paragraph (b) provides that "[i]n the case of abuse of corpse in any degree, the corpse or a relative of the corpse"); ORS 147.500 (effectuating crime victim's rights, defines victims in a way that only includes "persons"); *see also* ORS 419A.004(31) (defining victim as "person" for purpose of entire juvenile code including delinquency); ORS 181.550(1)(c) (law enforcement crime statistics tracked by race, color, religion, national origin, sexual orientation, marital status, political affiliation or beliefs, labor organization disability, age, economic status, or citizenship "of the victim"); OEC 404(2)(b) (pertinent trait of character of the victim); OEC 412 (victim's past sexual behavior); OEC 615 (court may not exclude from courtroom the victim in a criminal case); ORS 813.222 (notification of victims concerning defendant's diversion eligibility).

of victim to specific provisions, none of which include the animal neglect statutes or ORS 161.067. *See State v. Jones,* 339 Or 438, 444, 121 P3d 657 (2005) (holding that, where a definitional statute expressly designates the statutes to which it applies, that definition is inapplicable to statutes not listed). The point remains that the legislature has the power to designate, either expressly or by implication, a different meaning of victim than person. In fact, we have concluded, not infrequently, that the legislature has intended for the public, not a person or persons, to be the victim of a criminal offense. *See, e.g., Torres,* 249 Or App at 578 (the "victim" of a defendant's violation of the felon in possession of a firearm statute, ORS 166.270, is the public); *Goodness v. Beckham,* 224 Or App 565, 576, 198 P3d 980 (2008) (the "victim" of initiating false report, ORS 162.375(1), is the public, not the person about whom the false report was initiated). Thus, ever mindful of the ordinary meaning of victim, our objective remains to ascertain whether the legislature intended that meaning or a different meaning with respect to ORS 167.325.

The gravamen of the offense of second-degree animal neglect is the defendant's "fail[ure] to provide minimum care for an animal in such person's custody or control." Thus, the fact that ORS 167.325 proscribes the failure to act with regard to "an animal" indicates that the legislature intended to protect animals by creating the crime of second-degree animal abuse. *Cf. Moncada,* 241 Or App at 212 (the class protected by proscribing the failure to perform the duties of a driver to injured persons, ORS 811.705, are the "injured persons" toward whom a driver fails to perform his or her duties).

The definition of "minimum care" reinforces that conclusion. ORS 167.310(7) provides that "minimum care" means "care sufficient to preserve the *health* and *well-being* of an animal" and lists several nonexclusive requirements that must be provided to avoid a violation of the statute. Those requirements include basic necessities of life such as food, water, shelter, and veterinary care. ORS 167.310(7)(a), (b), (c), (d). The requirements go further, however, and include with regard to domestic animals, such benefits as "adequate space for exercise necessary for the health of the

animal," suitable air temperature, and reasonable grooming of the animal to protect its health. ORS 167.310(7)(e)(A), (B), (C). Thus, because it is explicitly directed toward the "health and well-being of the animal," the definition of minimum care indicates that the legislature intended to protect the animals referred to in ORS 167.325 when it enacted that statute. *Cf. Moncada*, 241 Or App at 212 (requirement in ORS 811.705(1)(e) that a driver provide "to any person injured in the accident reasonable assistance" reinforced conclusion that "victim" of that offense was the injured person the defendant failed to reasonably assist).

Our conclusion that the legislature intended to protect animals when it enacted ORS 167.325 is not the end of the inquiry, however, because it does not inexorably follow from that conclusion that the legislature intended for animals to be victims. In this court's opinion in *Glaspey*, we concluded that the children who witnessed the defendant's act of fourth-degree assault, ORS 163.160,[5] were "victims" for purposes of ORS 161.067(2), in part, because the provision elevating a defendant's act to a Class C felony when it was witnessed by a child indicated a legislative intent to protect children. *State v. Glaspey*, 184 Or App 170, 175-76, 55 P3d 562 (2002), *rev'd*, 337 Or 558, 100 P3d 730 (2004). The Supreme Court rejected that reasoning in reaching a contrary conclusion in its decision in *Glaspey*. 337 Or at 567. As the Supreme Court explained:

> "The difficulty with that theory is that it depends on our accepting the same general concept of victim that the state has been advancing all along, *viz.*, that harm of any sort, and even the mere potential for harm, means that the

---

[5] ORS 163.160 provides, in pertinent part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"* * * * *

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"* * * * *

"(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim[.]"

legislature intended for all such persons who may suffer such harm to be deemed 'victims.' But, for the reasons discussed above, we do not perceive such a legislative purpose in the wording of ORS 163.160(3)(c)."

*Id.* The "reasons discussed above" included uses of the term "victim" in other statutes as well as the legislature's repeated use of the term "victim" in ORS 163.160, all of which referred to the person who suffers the harm that is an element of the offense. *Id.* at 555-56. In short, generalized legislative concern is not enough to establish who the victim is under ORS 161.067(2). Instead, there must be affirmative textual evidence of a deliberate choice by the legislature.

For there to be a human victim in this case, it would be necessary to conclude that the legislature intended to treat neglected animals as property of their owners who, in turn, would qualify as victims of the offense. *See* ORS 161.067(2) (discussing property owners as victims). Defendant argues that the exception in ORS 167.310(7) for "emergencies or circumstances beyond the reasonable control of the owner," establishes that the animals referred to in ORS 167.325 are property. Generally, where a statute protects property from physical damage the victim of a defendant's violation of that statute is the owner of the property. *Luers*, 211 Or App at 265. However, unlike ORS 167.325, the statute at issue in *Luers*, ORS 164.325, codifying first-degree arson, specifically refers to "property." Here, there is no textual indication that the legislature intended ORS 167.325 to protect the property interest of an animal's owner by criminalizing acts of neglect that would adversely affect that interest. There are no cross-references in chapter 167 to the definitions contained in chapter 164, the "Offenses Against Property" chapter, and chapter 167 does not contain a definition of "property." In criminalizing offenses against property, the legislature has been thorough in defining the term "property" to cover the various ownership interests that a person might hold. *See, e.g.*, ORS 164.305(2). If the legislature had intended to protect an owner's property interest in an animal, it would have been natural to adopt the extensive definitions of "property" used elsewhere in the Criminal Code. That the legislature did not do so is evidence that it did not intend to protect the owners of animals when it enacted ORS 167.325.

Moreover, to conclude that the victim of a violation of ORS 167.325 is the owner of the animal neglected would lead to anomalous results. This case is exemplary. Here, we would have to conclude that the victim of the offenses is defendant, because he owned the animals that he neglected. Such a conclusion would make no sense. *Cf.* Article I, section 44(3) (providing that, "[i]n no event is it intended that the criminal defendant be considered the victim"). Another anomaly that would arise from the conclusion that the victim of animal neglect is a human owner is that the happenstance of separate ownership of individual animals in a larger group of neglected animals would produce more punishable crimes than if, as was the circumstance here, all of the animals were owned by the same person. In light of the statute's focus on the harm to individual animals, that outcome likewise would make little sense. Thus, we conclude that the victim under ORS 167.325 is not a person.

We have yet to construe a statute as providing no substance to the term "victim" for purposes of ORS 161.067(2), and nothing in the text or context of ORS 167.325 leads us to that novel conclusion in this case. It follows that the victim in this case must either be the animals themselves or the public at large. We next consider whether the victim was the public.

In *Torres*, we concluded that the public was the victim in a prosecution under ORS 166.270 for possession of firearms by a convicted felon. That statute did not expressly designate a victim, and we looked to the Supreme Court's interpretation of that statute in *State v. Hirsch / Friend*, 338 Or 622, 114 P3d 1104 (2005), where the court had explained that the purpose of the statute was to protect the public from the risk posed by armed felons. Accordingly, we held that the public was the victim of the defendant's multiple violations of ORS 166.270. *Torres*, 249 Or App at 578. Similarly, in *Goodness*, 224 Or App at 576, we rejected the argument that the "victim" of a defendant's act of initiating a false police report, ORS 162.375, was the person about whom the false report had been made. We relied on *State v. Allred*, 165 Or App 226, 235-36, 995 P2d 1210 (2000), where the court observed that crimes compiled in ORS chapter 162 were "offenses against 'public justice'" and that

"offenses against the public do not necessarily require the element of actual harm or injury to a particular person for conviction." (Emphasis in original.) Because ORS 162.375 did not require the element of actual harm to a particular person, we concluded in *Goodness* that the victim was the public at large. *Goodness*, 224 Or App at 576.

ORS 167.325 is compiled in ORS chapter 167, which is entitled "Public Health and Decency Offenses." A related statute, ORS 167.350, provides, in part:

"(1) In addition to and not in lieu of any other sentence it may impose, a court may require a defendant convicted under ORS 167.315 to 167.333, 167.340, 167.355 or 167.365 to forfeit any rights of the defendant in the animal subjected to the violation, and to repay the reasonable costs incurred by any person or agency prior to judgment in caring for each animal subjected to the violation.

"(2)(a) When the court orders the defendant's rights in the animal to be forfeited, the court may further order that those rights be given over to an appropriate person or agency demonstrating a willingness to accept and care for the animal or to the county or an appropriate animal care agency for further disposition in accordance with accepted practices for humane treatment of animals. The court may not transfer the defendant's rights in the animal to any person who resides with the defendant.

"* * * * *

"(3) In addition to and not in lieu of any other sentence it may impose, a court may order the owner or person having custody of an animal to repay the reasonable costs incurred by any person or agency in providing minimum care to the animal."

ORS 167.350 provides a mechanism whereby a court may ensure that neglected or abused animals receive minimum care, and it also provides for the reimbursement of costs of animal care that are incurred by the public. ORS 167.350(3), for example, contemplates that an "agency" may incur costs because of a defendant's violation of ORS 167.325 and allows a court to hold the defendant responsible for such costs.

Those contextual clues support the understanding that, even though animals usually are the property of persons, there is a broader public interest in their health,

care, and well-being that requires vindication when they are neglected. That interest might, if viewed in isolation, suffice to qualify the public as the victim of a violation of ORS 167.325. However, unlike the statutes at issue in *Torres* and *Goodness*, and like the statute at issue in *Glaspey*, ORS 167.325 identifies both an actual harm and the particular subject who must suffer that harm in order for a violation of the statute to be complete. That is, a person violates ORS 167.325 by "fail[ing] to provide minimum care for an animal in such person's custody or control." In short, based on the text and context of ORS 167.325, it appears that the legislature's primary concern was to protect individual animals as sentient beings, rather than to vindicate a more generalized public interest in their welfare. *Cf. State v. Hunter*, 141 Or App 73, 918 P2d 104, *rev den*, 324 Or 78 (1996) (in an animal neglect prosecution, the identity of the neglected animal is a material element that the state must plead and prove beyond a reasonable doubt).

The legislative history of the statute confirms that tentative conclusion. The legislature revised Oregon's animal cruelty laws in 1985, creating the distinct crimes of animal abuse, neglect, and abandonment. It did so in recognition that "[p]ublic attitudes have changed [since the cruelty laws were adopted in the 1920s and 1930s] and many people feel that animals should be given greater protection from cruel treatment and neglect." Staff Measure Analysis, Senate Judiciary Committee, SB 508, Mar 14, 1985, 1. Written testimony in support of SB 508 was presented to the House Judiciary Committee by David Hemphill, a Marion County Reserve Deputy Sheriff and animal cruelty investigator for the Willamette Valley Humane Society, the sponsor of the bill. Deputy Hemphill stated that the bill was necessary because the existing law had "vague and archaic language," had "no enforceable prohibition against abandonment," and had "a lack of clearly defined standards for animal care." Testimony, House Judiciary Committee, HB 508, June 12, 1985, Ex E (statement of David Hemphill). Hemphill concluded his testimony with the following remarks:

"I ask for your support of SB 508 on behalf of all responsible pet owners, and the animals as well, so that we can continue to make our state a better place for every living being."

*Id.* That testimony, together with the quoted staff measure analysis, support the conclusion that, although the broader public interest also was at play, the specific purpose of protecting individual animals from neglect was at the heart of the legislation. Accordingly, we conclude that the individual animal identified in each count of second-degree animal neglect for which defendant was found guilty qualified as a separate victim under ORS 167.325 for purposes of the application of ORS 161.067(2). It follows that the trial court erred in merging those guilty verdicts into a single conviction.

We emphasize that our task is not to second-guess legislative policy decisions, for example, in treating fish and horses as having comparable protected status under ORS 167.325. Thus, we do not detain ourselves with a potential parade of horribles such as the prospect of multiple convictions arising from an omission such as the failure to adequately care for a fish bowl full of guppies. To the extent that the exercise of sound prosecutorial and judicial sentencing discretion do not resolve such hypothetical concerns, their ramifications are best left for another day. In any event, such concerns do not arise in this case, where the harm that defendant permitted the subject horses and goats to suffer is replete and manifest.

Remanded for the entry of separate convictions on each guilty verdict for a violation of ORS 167.325, and for resentencing; otherwise affirmed.