Argued and submitted September 30, 1988, affirmed January 11, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# BOB VAN DE VORREN,
*Appellant.*

(L87-123CR; CA A45866)

767 P2d 96

Sally L. Avera, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Frank Gruber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge pro tempore, and Graber and Riggs, Judges.

GRABER, J.

## GRABER, J.

Defendant[1] appeals his conviction for first degree theft by deception. ORS 164.015; ORS 164.055; ORS 164.085. He claims that the trial court erred in denying his motion for judgment of acquittal. We affirm.

We recite the facts in the light most favorable to the state. ORS 136.445; *State v. Arnold,* 90 Or App 596, 599, 752 P2d 1300, *rev den* 306 Or 661 (1988). In January, 1986, defendant offered to rent a building in Alturas, California, from Mr. and Mrs. Jones, saying that he planned to open a resturant there. He told the Joneses that he had recently sold a restaurant in Belgium for $720,000 and would have the money when his wife arrived from Belgium in a few weeks. Defendant and the Joneses entered into a three-year lease in February, 1986. He did not make his March, 1986, lease payment and thereafter explained to the Joneses that he expected to inherit five to six million dollars from his father's estate in Belgium in November, 1986. In reliance on defendant's assurances of future substantial income, the Joneses lent him $25,000 to begin renovation of the restaurant premises. His wife came to California in May, 1986, but did not bring $720,000. Defendant told the Joneses that he would receive the money the following week. In the same month, he obtained a $10,000 loan from First Interstate Bank in Lakeview, Oregon. That was the first event that occurred in Oregon.

In June, 1986, when the $10,000 loan repayment was due, defendant and the Joneses borrowed $60,000 from the same bank. All three signed and were jointly and severally liable on the note, which provided that it was given in exchange "for value received."[2] However, the Joneses testified that they and defendant had agreed that he alone was to repay the loan. The funds from the loan were deposited directly into a checking account at First Interstate Bank in Lakeview, in the name of the Alturas restaurant. At that time, defendant, but not the Joneses, was authorized to draw on that account, and he quickly spent the money. Although defendant continued to assure the Joneses that his money from Belgium was

---

[1] Defendant's name is spelled two ways in the record, "Van De Vooren" and "Van De Vorren." At other times he has used other names. Whatever his name may be, we affirm his conviction. A thief by any name is still a thief.

[2] The $60,000 consisted of the earlier $10,000 loan plus an additional $50,000.

forthcoming, he never paid them anything. Neither defendant nor the Joneses have paid any principal on the $60,000 note.[3] As far as the record shows, the bank has not collected any of the delinquent note payments from the Joneses. In his affidavit of indigency requesting appointed counsel, completed in open court, defendant claimed that he had no assets, Belgian or otherwise.

The sole issue on appeal is whether a rational jury could find from the evidence that defendant committed first degree theft by deception. There was ample evidence from which a jury could conclude that defendant created and confirmed the Joneses' false impression that he had or would receive money with which he would pay the $60,000 note.[4] ORS 164.085(1)(a)(b)(e).

The remaining question is whether there was evidence that defendant obtained more than $200 of the Joneses' property.[5] Defendant argues, in essence, that he obtained the bank's property, but not the Joneses'. The $60,000 loan was made to the Joneses *and* defendant. In other words, in addition to being jointly liable to repay the loan, the Joneses and defendant jointly *received* it. Thus, the $60,000 belonged to all three parties. The funds were deposited into the checking account that defendant alone controlled, and he spent the money. Defendant obtained, through deception, the Joneses' property.

Affirmed.

---

[3] At one time, the Joneses made interest payments on the note.

[4] Contrary to defendant's assertion, the evidence of his deceptions consisted of more than the fact that he did not perform his promise to pay. *See* ORS 164.085(3). There was evidence that defendant repeatedly deceived the Joneses about both his Belgian assets and his intention to repay their loan from those assets. Defendant argues strenuously that, when he borrowed the money, he expected to repay it. He points to his purchase of restaurant equipment, as promised, as evidence of his intent. However, there was evidence from which a jury could conclude that defendant did not intend to repay the money when he took it.

[5] Defendant was charged with stealing the Joneses' property only.